UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In the Matter of the Complaint of KINDRA LAKE TOWING, L.P. and BLACK DIAMOND MARINE EQUIPMENT, INC. for exoneration from or limitation of liability. | No. 15 C 3174 Judge Thomas M. Durkin |
| In the Matter of the Complaint of FOUNDATION THEATRE GROUP, INC. for exoneration from or limitation of liability. | |

**MEMORANDUM OPINION AND ORDER**

Kindra Lake Towing, L.P., and Black Diamond Marine Equipment, Inc., bring this action under admiralty law, 46 U.S.C. § 30505, *et seq. See* R. 1. Kindra demise chartered[1] a barge to Black Diamond, which then demise chartered the barge to intervenor Foundation Theatre Group, Inc. The barge sank while docked at Navy Pier in Chicago. Kindra and Black Diamond seek a declaration that they are not liable for the barge accident. Foundation filed an intervenor complaint seeking a declaration regarding its potential liability. *See* R. 20. Additionally, Foundation answered Kindra and Black Diamond's complaint, asserting certain affirmative

---

[1] As the Court has noted previously in this case, a demise charter "constitutes the only form of charter that purports to invest temporary powers of ownership in the charterer." *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 182 (5th Cir. 1981). "A 'demise charterer' [is] one who contracts for the vessel itself and assumes exclusive possession, control, command and navigation thereof [and] is treated as the owner for many purposes[.]" *Matute v. Lloyd Bermuda Lines, Ltd.,* 931 F.2d 231, 235 (3d Cir. 1991). A demise charter is "therefore tantamount to, though just short of, an outright transfer of ownership." *Guzman v. Pichirilo,* 369 U.S. 698, 700 (1962).

defenses and claims against Kindra and Black Diamond. Kindra and Black Diamond made a motion to dismiss some of Foundation's claims, R. 53, which the Court granted in part and denied in part, R. 80 (*In the Matter of the Complaint of Kindra Lake Towing, L.P.*, 2015 WL 7351754 (N.D. Ill. Nov. 20, 2015)) (the "November 20 Order").

Foundation then filed amended claims for the following: unconscionable contract of adhesion against Black Diamond (Count I); rescission due to fraudulent misrepresentation by Black Diamond (Count II); rescission due to negligent misrepresentation by Black Diamond (Count III); damages due to fraudulent misrepresentation with respect to the barge's seaworthiness by Black Diamond and Kindra (Counts IV and X); damages due to negligent misrepresentation with respect to the barge's seaworthiness by Black Diamond and Kindra (Counts V and XI); violation of an implied warranty of seaworthiness by Black Diamond and Kindra (Counts VI and VIII); negligence with respect to "repair" and docking of the barge by Black Diamond and Kindra (Counts VII and IX). R. 82. Kindra and Black Diamond now seek to have Counts I-VI, VIII, and paragraph 22(a) of Count VII dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 86. For the following reasons, Kindra and Black Diamond's motion is granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Analysis

**I. Black Diamond**

Foundation's original pleadings included four claims against Black Diamond: (1) breach of warranty; (2) negligence; (3) fraudulent misrepresentation; and (4) negligent misrepresentation. Based on the Charter Agreement, the Court held that Foundation "waived claims relating to 'unseaworthiness' and 'breach of warranty.'" R. 80 at 9 (*Kindra Lake*, 2015 WL 7351754, at *4). And since all of Foundation's

3

claims (other than part of its negligence claim) were based on an allegation that the barge was unseaworthy, the Court dismissed those claims. Foundation has now repleaded these claims, along with additional counts seeking rescission of the Charter Agreement, in an attempt to void the waiver provision which formed the basis of the Court's prior dismissal of Foundation's claims.

### A. Misrepresentation Claims (Counts II, III, IV & V)

Foundation alleges that before it signed the Charter Agreement it inspected the barge and noticed that a "hatch on the deck of the barge which leads below deck . . . did not close properly" due to broken hinges and a broken seal. R. 82 ¶ 6. Foundation also alleges that it questioned Kindra and Black Diamond "regarding the condition of the hatch" and "requested that . . . [it] be repaired." *Id.* ¶¶ 12, 21 (on page 6). According to Foundation, an employee of Kindra and Black Diamond advised Foundation that "the hatch would not be a problem," and that "the hatch's failure to shut properly would not affect the barge's seaworthiness." *Id.* Foundation alleges that it relied on this representation in signing the Charter Agreement. *Id.* ¶ 12. Foundation alleges further that the defective hatch caused the barge to sink during a storm when "waves . . . surge[d] over the deck of the barge" and water entered "the hold of the barge through the defective hatch." *Id.* ¶ 26. Foundation argues that the Kindra and Black Diamond employee who assured Foundation that the hatch's condition would not affect the barge's seaworthiness knew that this was not true, and the statement was made in an effort to fraudulently induce Foundation to sign the Charter Agreement.

4

As the Court discussed in the November 20 Order, the Charter Agreement includes a disclaimer by Black Diamond of any implied or express warranty of seaworthiness. That same clause in the Charter Agreement provides that Foundation waived any claims for unseaworthiness. The Court held that because Black Diamond's disclaimer specifically mirrored Foundation's waiver in that both referenced "seaworthiness," any claim Foundation made based on the seaworthiness of the barge had to be dismissed.

This included Foundation's claims for fraudulent and negligent misrepresentation. Normally, a party's fraudulent or negligent misrepresentation will void a release or waiver. *See Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) ("As with any contract, a release [or waiver] may be set aside if there is fraud in the inducement." (citing *Havoco of Am., Ltd. v. Sunitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1992))). But the Charter Agreement contains a "no reliance" clause, which states that Foundation "understands" that Black Diamond made no "representation . . . regarding the . . . seaworthiness" of the barge. R. 20-1 at 2. The purpose of a "no reliance" clause is "to head off a suit for fraud" removing the reliance element necessary to state such a claim. *See Extra Equipamentos E Exportacao Ltda v. Case Corp.*, 541 F.3d 719, 724, 733 (7th Cir. 2008). Foundation argues that the quoted language from the Charter Agreement does not constitute a "no reliance" clause because it does not mention "reliance." R. 105 at 6. But in explaining the effect of "no reliance" clauses, the Seventh Circuit referred to other circuit court cases analyzing contract clauses that also do not use any variation of

5

the word "reliance." *See Rissman v. Rissman*, 213 F.3d 381, 387-88 (7th Cir. 2000) (citing *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411, 416 (1st Cir. 1989) (the contract stated that it "constitutes the entire agreement and supersedes all prior agreement and understandings, both written and oral . . . with respect to the subject matter"); *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1285 (D.C. Cir. 1988) (the contract stated that is "supersedes any and all previous understandings and agreements")). Other cases also have held that contract clauses that do not use the word "reliance" can function to negate the reliance element of a fraud claim. *See, e.g.*, *Boscia v. Monroe/Wabash Dev., LLC*, 2011 WL 10069624, at *4-5 (Ill. App. Ct. 1st Dist. May 31, 2011).[2] The language in the Charter Agreement stating that Foundation "understands" that Black Diamond made no "representation" regarding the barge's seaworthiness could function to negate any alleged reliance on Black Diamond's representation regarding the hatch, and thus, could be a sufficient basis to dismiss Foundation's fraudulent misrepresentation claims against Black Diamond.

There remains, however, a question (although the parties do not address it) regarding whether Foundation "knew what [it] was doing" when it agreed to this

---

[2] In *Boscia* the court held that the following contractual provision, which does not mention "reliance," is a "no reliance" clause: "no salesperson or employee of seller has authority to . . . make any representation or agreement not expressly contained in this purchase agreement or any exhibits attached hereto, and only those expressly contained herein shall be binding upon seller, or in any way affect the validity of this purchase agreement or form any part hereof. Purchaser acknowledges that, except as expressly stated herein, no representations have been made by seller, its agents or employees, in order to induce the purchaser to enter into this purchase agreement." 2011 WL 10069624, at *1.

provision of the contract even though it allegedly did so in reliance on an alleged misrepresentation by Black Diamond. *See Extra Equipamentos*, 541 F.3d at 724. The Seventh Circuit has explained that "no reliance" clauses are "'big boy' clauses (as in 'we're big boys and can look after ourselves')," and "if someone who is not a big boy . . . signs a big-boy clause, . . . an inquiry into the circumstances of its negotiation" can be appropriate. *Id*. Whether Foundation is in fact a "big boy" must be considered before a "no reliance" clause is enforced. *See Rissman v. Rissman*, 213 F.3d 381, 387-88 (7th Cir. 2000) (Rovner, J. concurring) ("[A]ll circumstances surrounding the transaction are relevant in determining whether reliance on prior oral statements can be deemed reasonable. Thus, although it may be determinative in many—and perhaps most—cases, the existence of a non-reliance clause will not automatically preclude damages for prior oral statements."). Foundation has not alleged or argued that it is not a "big boy." But the existence of a "no-reliance" clause functions as an affirmative defense, and a plaintiff (which is Foundation's posture on this motion) "ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 2016 WL 2849334, at *1 (7th Cir. May 16, 2016). Furthermore, even though Foundation is a corporate entity, it is not clear from the facts alleged in the pleadings whether Foundation should be considered a "big boy." For instance, the Court does not know whether Foundation was represented by counsel in the negotiations, or whether Foundation is a sufficiently sophisticated entity such that it should be held to the strict effect of a "no reliance" clause. As the Seventh Circuit has held, these questions are relevant

7

to whether Foundation's reliance on Black Diamond's alleged misrepresentations was reasonable. *See Rissman*, 213 F.3d at 387-88. And whether reliance was justified "is normally a question of fact." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

Therefore, Black Diamond's motion to dismiss Foundation's claims for fraudulent misrepresentation (Counts II, III, IV & V) is denied.[3]

## B. Unconscionable Contract of Adhesion (Count I)

Foundation also seeks rescission of the Charter Agreement alleging that it is an unconscionable contract of adhesion. "Procedural unconscionability consists of

---

[3] Although remedies are not at issue on this motion, the Court notes that Foundation seeks both rescission and damages for fraudulent misrepresentation, *see* R. 82, even though generally a plaintiff must choose one or the other, and rescission is not available when it is impossible to return the parties to the pre-contractual status quo. *See Hassan v. Yusuf*, 944 N.E.2d 895, 920 (Ill. 2011) ("[T]he remedy of rescission contemplates voiding the contract as if it had never existed, returning the parties to the status quo *ante*, their pre-contract status, and generally requires each party to return to the other the benefits received under the contract. In addition, it is well established that a remedy based on rescission is inconsistent with a remedy of damages, which arises out of the enforcement of the contract, and the award of both is, therefore, inappropriate."); *On Command Video Corp. v. Roti,* 2010 WL 2740309, at *2 (N.D. Ill. July 12, 2010) ("Contracts induced by fraud are voidable at the election of the defrauded party. A claim of fraudulent inducement has one of two remedies: rescission of the contract, or performance and a lawsuit for damages."); *Wilbur v. Potpora,* 462 N.E.2d 734, 738 (Ill. App. Ct. 1st Dist. 1984) ("One induced to contract through fraud may at his election rescind the contract and recover the consideration that he has paid or affirm the contract and recover" on a claim for breach of contract.). Additionally, Foundation seeks rescission of specific clauses of the Charter Agreement, and such a remedy is generally unavailable. *See N. Trust Co. v. MS Sec. Servs., Inc.*, 2006 WL 695668, at *16-17 (N.D. Ill. Mar. 15, 2006) (citing *Corbett v. Devon Bank*, 299 N.E.2d 521, 530 (Ill. App. Ct. 1st Dist. 1973)). Similarly at this time, the Court declines to address Black Diamond's unsupported, one sentence argument that "Illinois law does not allow for equitable rescission to be granted on the basis of a negligent misrepresentation." *See* R. 86 at 12. The parties should address relevant authority on appropriate remedies when and if remedies become a disputed issue.

some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (Ill. 2006) (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403 (Ill. App. Ct. 1st Dist. 1980)). An analysis of whether a contract is procedurally unconscionable asks "whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777-78 (7th Cir. 2014) (citing *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011)). The Court has already held that an analysis into "the circumstances surrounding the formation of the contract" is appropriate to determine whether Foundation understood the force of the "no reliance" clause in the Charter Agreement. If that inquiry should reveal that Foundation did not have "the opportunity to understand [that] term of the contract" then the Charter Agreement could be unconscionable. Notably, other courts have found that allegations supporting a fraudulent inducement claim could also support an unconscionability claim. *See M. Block & Sons, Inc. v. Int'l Bus. Machines Corp.*, 2004 WL 1557631, at *7 (N.D. Ill. July 8, 2004) (allegations of fraudulent inducement sufficient to also state a claim for unconscionability); *cf. Cannon v. Burge*, 752 F.3d 1079, 1102 (7th Cir. 2014) (claim of procedural unconscionability failed where it was based on allegations insufficient to state a claim for fraudulent inducement); *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933 (N.D. Ill. Mar. 27, 2013) (same); *see also Original Great Am.*

9

*Chocolate Chip Cookie v. River Valley,* 970 F.2d 273, 281 (7th Cir. 1992) ("The doctrine of unconscionability [is] closely allied . . . to fraud and duress, [and] is designed to prevent overreaching at the contract-formation stage."); *Singer v. Sunbeam Prods., Inc.*, 2016 WL 1697777, at *4 (N.D. Ill. Apr. 28, 2016) ("A determination of unconscionability may "turn on a showing of acts of bad faith such as concealments, misrepresentations, [or] undue influence."); *Children's Surgical Found., Inc. v. Nat'l Data Corp.*, 121 F. Supp. 2d 1221, 1225 (N.D. Ill. 2000) (citing Texas law to hold, "A contract may be procedurally unconscionable if the plaintiff presents evidence of the seller's overreaching or sharp practices combined with the buyer's ignorance or inexperience."). Black Diamond argues that Foundation's claim for unconscionability should be dismissed because Foundation is a "sophisticated . . . business entity." R. 109 at 4. But the fact that Foundation is a corporation does not necessarily alter this analysis absent discovery, as courts have contemplated the possibility that sophisticated business people and entities can fall victim to unconscionable contracts. *See Kinkel*, 857 N.E.2d at 264 ("Nor does the mere fact that both parties are businessmen justify the utilization of unfair surprise to the detriment of one of the parties . . . ." (quoting *Frank's Maint.*, 408 N.E.2d at 410)); *Timmerman v. Grain Exchange, LLC*, 915 N.E.2d 113, 121 (Ill. App. Ct. 5th Dist. 2009) (same); *M. Block & Sons*, 2004 WL 1557631, at *7 (denying a corporation's motion to dismiss claim that contractual provision limiting damages was unconscionable); *Al Maha Trading*, 936 F. Supp. 2d at 943-44 (applying elements of procedural unconscionability to a corporation and stating that "contractual

provisions . . . between two sophisticated business parties will be enforced *unless* there is a compelling reason not to do so") (emphasis added); *Thomas Eng'g, Inc. v. Trane Co.*, 1994 WL 692698, at *2 (N.D. Ill. Dec. 1, 1994) (finding genuine issues of material fact for trial regarding a corporation's procedural unconscionability claim). And although whether a contract is unconscionable is a question of law, "the circumstances surrounding the formation of the contract," which are relevant to an unconscionability analysis, are often fact dependent. *See In re Rust-Oleum Restore Mktg., Sales Practices and Prods. Liab. Litig.*, 2016 WL 74671, at *15 (N.D. Ill. Jan. 7, 2016) ("Here, factual inquiries exist as to the relationships between and relative positions of the parties, the adequacy of the bargaining position, and the existence of meaningful alternatives to Plaintiffs.") (citing cases); *M. Block & Sons*, 2004 WL 1557631, at *7 ("While it is a question of law whether the contract is unconscionable, it is a question of fact whether or not the circumstances and the process by which the contract was formed show a lack of meaningful choice."); *Countrywide Home Loans, Inc. v. Scott*, 2011 WL 10468180, ¶ 36 (Ill. App. Ct. 3d Dist. Apr. 11, 2011) ("Allegations of . . . unconscionability are questions of fact . . . ."). Here, factual questions exist that are relevant to Foundation's understanding of the Charter Agreement. Therefore, Black Diamond's motion to dismiss Foundation's claim that the Charter Agreement is unconscionable at this stage of the proceedings is denied.

### C. Breach of Warranty (Count VI) & Negligence (paragraph 22(a) of Count VII)

To the extent that Black Diamond's disclaimer of the implied warranty of seaworthiness may be unconscionable depending on the facts adduced regarding Foundation's level of sophistication, Black Diamond's motion to dismiss Count VI is denied. Similarly to the extent that Black Diamond's waiver of any claim based on the seaworthiness of the barge is unconscionable, Black Diamond's motion to dismiss paragraph 22(a) of Count VII is also denied.

## II. Kindra Lake

Foundation has not alleged any new facts with regard to Kindra Lake. Therefore, for the reasons stated in the Court's November 20 Order, Count VIII is dismissed.

## Conclusion

For the foregoing reasons, Black Diamond's motion to dismiss Counts I, II, III, IV, V, VI, and paragraph 22(a) of Count VII, is denied. Kindra's motion to dismiss Count VIII is granted, and that claim is dismissed without prejudice. Should Foundation desire to amend its claims, it must make a motion for leave to do so, supported by a memorandum specifically noting how that amendment would cure this dismissal.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: June 13, 2016